
## BRIDGE *vs.* JOHNSON.

Whether a defendant can, under the law as it existed previous to the last re-
vision of the statutes, *set off* a demand against the *payee* of a note prosecu-
ted in the name of an *assignee*, who *bona fide* purchased it when *over due*, or
whether a set off is allowed only against the *party to the record* or the *par-
ty in interest, quere.*

Where the members of the court for the correction of errors are *equally divi-
ded* as to the judgment to be pronounced, the judgment of the court below
is of course *affirmed;* but such *formal* affirmance does not settle the ques-
tion of law.

The proper mode of putting the question in a court for the correction of er-
rors, or in a court of appeal, is, "Shall this judgment (or decree) be re-
versed?" and if a majority of the court does not vote for a *reversal,* the
judgment or decree is of course *affirmed.*

ERROR from the supreme court. Johnson sued Bridge
on a promissory note for $50, dated 12th March, 1823, pay-
able to Sheldon Smith or *bearer,* on 1st June, 1824. The
defendant pleaded *non assumpsit,* and gave notice that on the
trial of the cause he would *set off* a promissory note for $17,84,
made by Smith to J. A. Spencer or *bearer,* dated 12th June,
1825, payable on demand, transferred to the defendant;
and also, that he would set off a judgment for $12,84, ob-
tained by him in the Madison common pleas against Smith,
in June, 1825, alleging that at the time of the transfer of the
note from Spencer to him, and at the time of the obtaining of
the judgment in the C. P., Smith was the holder of the note
declared on. On the trial of the cause, the plaintiff proved
his note, and that he had purchased it fairly and paid for it.
He further proved that on the 25th July, 1825, he demanded
payment of the defendant, who said that he had $50 in silver
in the hands of his lawyer at Lenox; that he would go for
the money on the succeeding Saturday, and would then *settle
the note or pay the note,* using one or the other of the ex-
pressions, but which the witness could not say. In the same
conversation, the defendant mentioned that he had had a suit
with Sheldon Smith in the Madison C. P. and had beat
him. It was further shewn on the part of the plaintiff that
on the last of July or first of August, 1825, the defend-
ant called at his house and stated that he had failed to obtain

the $50 at his lawyer's, requested the fact to be communica- NEW-YORK,
ted to the plaintiff, and that he wished him not to sue the Sept. 1830.

Bridge
v.
Johnson. note; which communication was made to the plaintiff. The defendant then offered to prove the note and judgment set forth in the notice of set off, and that before the commencement of the suit, and about the first of August, he had offered to transfer the note and judgment to the plaintiff, and to pay him the balance in cash; and that *Smith* was a responsible man. This evidence was objected to and rejected by the judge, on the ground that the defendant had not set up such claims, or given notice of the same to the plaintiff when the demand of payment was made of him by the plaintiff, but had then promised to pay or settle the note, and given the plaintiff reason to expect that he would pay the same without setting up any claim to a set off or any other defence against the note; and the judge charged the jury to find a verdict for the plaintiff for the amount of the note and interest, who found accordingly. The defendant tendered a bill of exceptions, which was argued on a motion for a new trial in the supreme court. The new trial was denied, 6 *Cowen*, 693, and judgment rendered for the plaintiff, and the defendant sued out a writ of error.

The following opinion was delivered by Mr. Justice Woodworth, in the supreme court, on refusing a new trial:

The promise in this case to pay, was without consideration, as the plaintiff had previously purchased the note; and the defendant did nothing to induce the plaintiff to purchase.

On a different ground, however, I think the evidence inadmissible. In the case of *Wheeler* v. *Raymond*, 5 *Cowen*, 231, the doctrine of set off, when relied on against the plaintiff on the record, was fully considered. It was there held that the act has reference to persons dealing together, and having demands against each other; that in such cases a set off is allowed; but that where the plaintiff on the record is a stranger to the set off, and the demand not against him, the set off was not within the provisions of the act, which declares, that if the plaintiff is overpaid, the jury shall find a verdict for the defendant, and certify how much the plaintiff

is indebted more than the sum demanded; and that the defendant shall have judgment and execution for the balance. If this be a sound construction of the act, it follows that the set off is allowable only in those cases where, *if it exceeds the plaintiff's demand, the defendant may compel the plaintiff to pay the excess.*

It would not be pretended that this plaintiff was liable to judgment and execution, had the defendant's set off exceeded his note. It is true, the plaintiff took the note, subject to the equity which existed between the payee and maker. But it must always be understood as inseparable from that principle, that the equity, or defence relied on, is such as may be used consistently with the established forms of proceeding in a court of law; they cannot be made to yield to the particular hardship, if any, of a given case. A set off is only available in consequence of the statute, and in the manner there pointed out. When a defendant cannot place his defence within its provisions, he can derive no benefit from it. In the case of negotiable paper, a defendant who has a *bona fide* set off may sustain an injury: but it is for the legislature to extend the remedy. This construction of the act does not impair any defence, not depending on the question of set off. If the defendant had paid the note in fact, or shewn it was not valid in its origin, or otherwise discharged, before transfer and after due, no difficulty would lie in his way. But that is not the case. The ground of defence is a set off, which would be objectionable in an action in the name of the payee; but is not valid against the plaintiff, who sues in the character of endorser, or bearer. The motion for a new trial must be denied.

*J. A. Spencer*, for the plaintiff in error, insisted upon the following points: 1. The evidence did not prove an absolute promise to pay; but if such promise was made, it was a *nudum pactum*, the plaintiff had previously purchased the note, and the defendant did nothing to induce him to make the purchase; 2. The note had long been due and dishonored when it was transferred by the payee to the plaintiff; he therefore took it subject to all equities, and to every de-

fence which existed against it in the hands of the payee; 3. The set off ought to have been received; it did not exceed the amount of the note declared on, and would only have reduced the amount of the plaintiff's recovery.

*P. Gridley*, for defendant in error, insisted upon the following points:

I. The promise of Bridge to pay the note without insisting on his set off, on which promise Johnson relied, precludes the right of making the set off. The promise was virtually an absolute one. In support of this point: 1. Such promise was presumptive evidence that the demand offered had been paid by Smith; or of some arrangement, by which Bridge was to look to Smith and not insist on the set off; 2. The forbearance to sue was a sufficient consideration of the promise to pay the note; 3. The promise, independently of its legitimate operation as a contract, was operative as a *waiver* of the right of set off, in which case no consideration is necessary; 4th. The promise " to pay or settle" is an unconditional promise: it is as strong as the promise " to settle" in 16 *Johns. R.* 226, and stronger than " to adjust" in 19 *Johns. R.* 49, and was unaccompanied with any claim of set off.

II. The demands offered as a set off, not being against the plaintiff on record, or in interest, were inadmissible under the statute of set off. 1. Upon the established principle of construing statutes, the statute of set off cannot apply to this case. The parties on record never had any " dealing together," nor were they " indebted to each other," and the provision of certifying the balance against the plaintiff is wholly incompatible with the right of set off in this case. 2. The weight of authority, (so far as this point has been distinctly discussed by the courts,) is decidedly against the construction contended for by the plaintiff in error. 3. If it *be a doubtful question*, this weight of authority is entitled to great influence, especially as the tone of adjudication is now against an enlarged construction both of constitutional and sratutory law.

III. The fact that the set off offered being less than the note, would not require a certificate against the plaintiff, does not make this case an exception to the general rule. The construction of the statute must be uniform and immutable. Otherwise it may be made to depend on the *opinion of a jury* as to the amount of the plaintiff's claim, or of the defendant's set off, where the amount of either is a matter of litigation.

The following opinions were delivered :\*

By the CHANCELLOR. It is impossible to sustain the writ of error in this case without overturning the law of the land, as established by the unanimous opinion of all the members of this court in the case of *Raymond* v. *Wheeler*, 9 *Cowen*, 295. In that case, as well as in this, the set off was claimed against one who was neither a party to the record, nor the person for whose benefit the suit was brought. The *supreme* court decided that the set off could not be allowed againt the person for whose benefit the suit was brought unless such person was the nominal plaintiff on record. This was undoubtedly carrying the principle beyond what was understood by the profession to be the settled rule of law on the subject. The only member of this court whose opinion is reported, was unwilling to sanction the decision to that extent, but he agreed that there could be no set off in a court of law unless the person against whom it was claimed was either the plaintiff on record, or the party for whose benefit the suit was brought. Although the form of pleading was discussed on the argument, he declined ex-

---

\* It having been enacted in the last revision of the laws, that in a case like this, a set off is allowable *to the amount of the plaintiff's debt*, 2 *R. S.* 354, § 18, *sub.* 9, it might at first blush appear like a work of supererogation to publish a report of this case ; but as it is understood that there are several cases yet depending, presenting the same question, and the judgment of the supreme court having been affirmed *pro forma* only, in consequence of the members of the court for the correction of errors having been *equally divided* in opinion, the reporter has deemed it his duty to present the case to the profession, that they may have the benefit of the opinions delivered.

pressing any opinion on that question, as it had not been

passed upon in the court below.

It is evident, therefore, that every member of this court who voted upon the final decision of that cause intended to go the length of deciding that a set off could not be maintained except against a party to the record, or against the real party litigant in the suit, if it was brought in the name of a *nominal* plaintiff. Those who went the whole length of sustaining the opinion of the supreme court necessarily concurred in the opinion of Senator *Stebbins*, that the set off must be against the party to the record, or the party for whose benefit the suit was brought. Believing as I do, that the opinion pronounced by him was the correct exposition of the law as it then existed, or rather that the decision could not be legal to any greater extent, I must presume this court sanctioned that opinion. It was only necessary to go thus far to decide the case then before the court; but to that extent the question was directly before them, and their decision must be considered conclusive.

Even if it was competent or proper for us to review the former decision of this court, I doubt whether it would be equitable or just to allow the set off in the case now before us. The judge who delivered the opinion of the supreme court supposes the promise of Bridge to pay the note to Johnson, after notice of the assignment to him, was without consideration, and void. Such would have been the case unquestionably, if the note had been already paid, or there had been no legal or moral obligation on the part of Bridge to pay it. This was the case in *Taylor* v. *Bates, 5 Cowen,* 376, relied upon by the counsel for the plaintiff in error. It appears from the report of that case that Barnes, a bankrupt, who was indebted to Bates and his partner, put a demand into the hands of the former to collect and to pay over the balance after retaining that debt. There was therefore no moral obligation to pay that amount to Barnes, or his assignee. It was in the nature of a payment, not of a set off. There was no consideration for the supposed promise to pay the whole amount to the assignee; and it is also very prob-

ble in that case that such was never the intention of the party, although his letter might bear that construction. But a set off, as in the case before us, where both parties are perfectly solvent and responsible, relates rather to the remedy than to the substantial rights of the parties. It is a privilege to which a defendant may resort to prevent circuity of action, but which he may in most cases waive without injury to himself.

I think it doubtful whether there was in fact any demand belonging to Bridge at the time Johnson purchased the note, which he had a right to set off. The bill of exceptions contains a very imperfect statement of the facts; and on a first perusal seems to convey the impression that Bridge was the actual holder of the note given to Spencer at the time he promised to pay the $50 note to Johnson, and that he was also the owner of the judgment against Smith. On a more careful inspection of the record, however, it appears that the notice of set off stated that the Spencer note had been transferred to Bridge, before Johnson became the owner of the $50 note; but the offer made at the trial was merely to prove the note and to off set the same, without any offer to prove that it had been transferred to him before Johnson's purchase. The judgment also appears to be a judgment for costs, which of course belonged to the attorney and not the client, and Bridge was not entitled to those costs until he had paid his attorney. He had therefore no equitable claim to off set those costs against a debt of his own, without the consent of the attorney. It is very difficult therefore to divest the mind of the belief that the whole of this pretended off set was an after arrangement between Bridge and his attorney, and intended to prevent the necessity of paying over to the client the fifty dollars in silver in his hands.

Whether this was so or not, it was perfectly equitable and just that Bridge should take out his execution and collect his judgment against Smith, who is admitted to be perfectly responsible, and collect his note in the same manner, instead of deducting it from the $50 note, for which Johnson had paid the full value. Even a court of equity would not sus-

tain a bill for an off set under such circumstances. In *Bentley* v. *Morse*, 14 *Johns. R.* 468, it was held that a moral obligation which could not be enforced either at law or in equity was a sufficient consideration to support an express promise. The same decision was made in *Willing* v. *Peters*, 12 *Serg. & Rawle*, 177. Here was certainly a moral obligation on the part of Bridge to collect his demands from the real debtor, who was abundantly able to pay them, instead of deducting them from the note for which Johnson had paid a full consideration. In *Fenner* v. *Mears*, 2 *Wm. Black.* 1270, where an action of assumpsit was brought by the assignee of a bond on a promise by the obligor, Mr. Justice Blackstone says : "The assignment and other transactions are fully sufficient as a consideration to make the assumpsit binding. Upon that ground it is therefore clear that a general assumpsit will lie." And in *Compton* v. *Jones*, 4 *Cowen's Rep.* 13, the supreme court decided that the assignee of a sealed instrument might recover on a promise to pay the amount to him, without any new consideration. Besides in this case there was forbearance to sue, which is also a sufficient consideration to support a promise even as against a third person. *Jones* v. *Potter*, 5 *Serg. & Rawle*, 522. I am therefore satisfied that if Bridge had these demands at the time of the promise, and had a legal right to offset them, the assignment of the $50 note to Johnson was a sufficient consideration to sustain an express promise to pay that note to the assignee, and such promise was, under the circumstances, a legal waiver of the right of set off.

The result of my opinion is, that on both grounds assumed by the defendant in error, the judgment of the supreme court should be affirmed.

By Mr. Senator ALLEN. This case, according to my view of it, must be decided in accordance with the provisions of the statute. The act of 1813 declares, that where two or more persons *dealing together* be indebted to each other, it shall be lawful for the defendant to plead the general issue, and give notice in writing of what he will insist upon on the trial, and to give any bill, account or demand so given notice of in evidence, &c. 1 *R. L.* 515.

The persons authorized to set off demands, therefore, must be such only as have dealings together; the act evidently refers to mutual dealings between the parties, as if A. purchases articles of B., while B. deals with A. by having certain labor performed by him. Now, if A. brings a suit against B. for the labor he has performed, B. may set off his account of the articles had and received of him by A. The case between Johnson and Bridge, however, is not a case of *mutual dealings*. Johnson is the *bona fide* holder of the note made by Bridge, while Bridge attempts to set off against the demand of Johnson, a debt due to him by Sheldon Smith, not a debt due him by Johnson; nor does he pretend that he and Johnson had any dealings together on the subject, except the demand made upon him for, and his promise to pay the note of fifty dollars.

In *Prior* v. *Jacocks*, 1 *Johns. Cas.* 169, the court held that dealings between the *parties to the record only* can be set off. In the case under consideration, Johnson was plaintiff and Bridge defendant; Smith, therefore, whose debt the defendant attempted to set off, was not a party to the record, and in accordance with the decision referred to, the set off was properly denied by the court below. A demand which a defendant is entitled to set off must be such as has arisen from transactions between the parties to the suit; therefore, a negotiable note of hand given by the plaintiff to a stranger, and endorsed by him to the defendant, cannot be set off by him against the plaintiff's demand. *Holland* v. *Makepeace*, 8 *Mass. R.* 418. The same principle is established by the decision in the case of *Wake* v. *Tinkler*, 16 *East*, 36, and by *Wheeler* v. *Raymond*, 5 *Cowen*, 281. This rule is founded in common sense. Any other rule would materially injure the commercial interests of the community.

Bills of exchange and promissory negotiable notes are a medium through which mercantile transactions are conducted and payments effected. Bills of exchange often pass into the hands of third and fourth holders, in the payment of *bona fide* debts, before they come to maturity; and if the law permitted a debt, due by the endorser to the drawer or

acceptor, to be set off against the claim of the holder, much embarrassment would be experienced in the mercantile transactions of our country, and the confidence now placed in this species of exchange would be entirely overthrown. The same evil would result if the endorser of a promissory note was liable to have a debt due from the payee to the maker set off against his claim.

I am of opinion, therefore, that the law as established by the cases cited, is correct and in accordance with the statute, and that the decision of the court below ought to be affirmed.

By Mr. Senator Beardsley. It was argued in this court, on the part of Johnson the defendant in error and plaintiff below, that the promise to " settle the note" or " pay the note" was an absolute promise and presumptive evidence that the demands offered to be set off had been paid or arranged by Smith; that it amounted to a waiver of the right of set off, and that the forbearance to sue was a sufficient consideration of the promise to pay. It appears that Bridge, in the first conversation, mentioned that he had recovered a judgment against Smith. I should infer that he could not have intended (if he understood his rights) to make an absolute promise. Probably all he intended was that he would have the business settled or the balance paid after he obtained his money. Johnson had already purchased the note of Smith, and this promise, whatever it was, could subject him to no inconvenience, because he did not purchase on the strength of the promise.

The cases of *Gould* v. *Chase*, 16 *Johns. R. 226*, and *Henry* v. *Brown*, 19 *id.* 49, relied upon by the defendant in error, are not analogous. In those cases the set offs were matters existing prior to the giving of the note and bond, and in each case an absolute promise to pay to the assignee was proved. The court say, in the first case, that " in absence of all explanation, the giving the note transferred is *prima facie* evidence that the demands offered as an offset had been satisfied, and that, coupled with an absolute promise, the presumption is irresistible." The case of *Henry* v. *Brown* was decided on the same principle, and the court say that after an

NEW-YORK, Sept. 1830.

Bridge
v.
Johnson.

express promise and part payment, the defendant, "without *farther explanation,* shall not be allowed to set off prior existing claims."

Nor did the promise of the defendant, under the circumstances of the case, amount to a waiver of his right, and the cases relied on do not sustain that position. *2 Campb. R.* *450.* *3 Johns. R. 68.* *11 id. 146.* *12 id. 282.* *14 id. 468.* Forbearance to sue is undoubtedly a sufficient consideration for a new promise; but in the present case it does not appear that there was any forbearance, or that Johnson ever agreed to forbear. There surely could be but little delay in offering to pay on the part of Bridge, because it appears that he called, the last of July or first of August, and requested Johnson in his absence not to sue; and he offered to prove that about the first of August he proposed to pay the balance, &c. I think, therefore, the supreme court were right in overruling the opinion of the circuit judge, and the promise, if absolute, was without consideration and void; and on this point *Taylor* v. *Bates,* 5 *Cowen,* 376, is an express authority.

On the argument it was objected that the defendant's offer at the trial was not broad enough to admit the set off. The notice was sufficient, and the circuit judge rejected it on the ground that Bridge had not set it up when Johnson called on him to pay the note. Being rejected on that ground, we have a right to infer that Bridge intended to prove the facts set up in his notice of set off; and this presents the important question whether the set off was available.

It was urged on the argument that the decision of *Wheeler* v. *Raymond,* in error, 9 *Cowen,* 295, had settled this question; and to that opinion I was myself (from a hasty examination of the case at the time) rather inclined. If I could satisfy myself that this court intended, in *Wheeler* v. *Raymond,* to decide the precise question now before us, and that it was in that case necessarily raised for decision, I should (although contrary to my own judgment) feel constrained to acquiesce. Upon an examination of that case, however, I cannot perceive that it was necessary to the decision of the point there raised, to decide the present question. In that

case the set off was *pleaded.* It was therefore a sufficient answer to say that our statute required a *notice,* and that it could not be pleaded as under the English statutes. *Alsop* v. *Caines,* 10 *Johns. R.* 396. 13 *id.* 22. The supreme court, however, discuss and decide the question, that in an action by a trustee the defendant cannot set off a demand against the *cestui que trust;* and in the whole opinion of the supreme court, Chancellor Jones in this court is said to have concurred, while Mr. Senator Stebbins gave an elaborate and learned opinion, in which, though he concurred in affirming the judgment, he did so for a different reason from that assigned by the supreme court and Chancellor Jones. The learned senator contended, and I think successfully, that an off set should be admitted against the party in interest as well as against the party to the record ; but he took another distinction to which I do not subscribe, to wit, that the set off must be against the party to the record or the party in *immediate* interest, disregarding equities against intermediate parties through whom the demand sought to be recovered had passed. Now on what point this court intended to decide *Wheeler* v. *Raymond* I am at a loss to determine ; but as the court have suffered the present question to be argued, I infer that doubts are entertained whether in *Wheeler* v. *Raymond* it was intended by a majority of the court to decide the present question.

After the reiterated expressions of opinion of the supreme court, sanctioned by the opinion of Chancellor Jones, and apparently (although not certainly on this particular point) acquiesced in-by a majority of the then court of errors, I confess I feel a diffidence in hazarding an opposite opinion.

The exposition of the statute in relation to off sets in *Wheeler* v. *Raymond* was certainly in opposition to the received opinion of the profession, and against a uniform current of decisions at the circuits and in the supreme court. If that exposition be correct, it is calculated to lead to frauds of the most barefaced and palpable kind. It is only for an insolvent and dishonest holder of a promissory note, years after it is due and dishonored, and satisfied by off sets to ten times the amount, to transfer it, or merely have it sued in

the name of a third person, and under the decision of the supreme court, he sets the maker at defiance and subverts the equity of the statute. Such a construction should not be yielded to, unless from imperious necessity.

Our statute of set offs, (1 *R. L. of* 1813, *p.* 515,) contains three provisions : by the first, if the debt demanded is satisfied by the set off, the plaintiff shall take nothing ; by the second, if it is found that part is satisfied, the plaintiff shall have judgment for the balance only. These two provisions are substantially the same as the English statutes, except that the latter may be pleaded or given in evidence with the general issue and notice, while ours must always be by notice accompanying the plea of the general issue ; and in *Gordon* v. *Bowne*, 2 *Johns. R.* 155, and *Root* v. *Taylor*, 20 *Johns. R.* 138, it is decided that they are of the same import, "and that the English decisions upon the construction of their statute are in point as to the construction of our act." By the third provision in our statute, the defendant, where the plaintiff has been overpaid, is to have the balance certified in his favor, and is to recover it against the plaintiff. This is different from the English statute, and this provision has led to the decision in *Wheeler* v. *Raymond* and in the present cause. And here it may be proper to note the phraseology of the statute. By the two first provisions, "if the debt or sum demanded" is satisfied or is partly satisfied by the set off, "the plaintiff shall take nothing, or shall have judgment for the balance only ;" while in the third provision there is a change of language : it is, "but if it appears to the jury that *the plaintiff* is overpaid," they shall find a verdict for the defendant, and certify to the court how much they find *the plaintiff* to be indebted or in arrear to *the defendant ;* and for the sum so certified the defendant is to have judgment. It may therefore, I think, be fairly inferred that the legislature intended to provide for a case like the present.

It is admitted that the statute was passed to ameliorate the law, to save circuity of action, and to prevent litigation ; and that it is to be favorably and benignly construed. Without this admission, it would be extremely difficult to reconcile *Tuttle* v. *Beebe*, 8 *Johns. R.* 142, *Bottomly* v. *Brooke, referred*

*to in Winch* v. *Keeley,* 1 *T. R.* 623, and 3 *Binney,* 135, with the decision of the supreme court in the present case.

All set offs, not growing out of contracts or dealings between the immediate parties to the suit, are a departure from the letter, and are admitted under the equity of the statute. Now, in regard to promissory notes, (the case under consideration,) the books are full and uniform, that where a note is negotiated after it is due, its non-payment is a suspicious circumstance ; it is dishonored ; and the endorsee or purchaser takes it wholly on the credit of the endorser, payee or seller, and subject to all the equities that existed against him. 4 *Mass. R.* 372. *Chitty on Bills,* 98 *to* 119. 1 *Campb.* 383. 3 *T. R.* 81. 2 *Caines,* 372. Taking it wholly on the credit of the assignor or seller, and not on the credit of the maker, the purchaser stands in the relation of an assignee of a chose in action. If, therefore, a dishonored note has passed through half a dozen hands before it comes to the plaintiff, with each of whom the maker has had dealings, and has a balance due him from each, I think, under the equity of the statute, the plaintiff would be considered the representative of all through whose hands the note had passed after due ; and the maker might avail himself of all these set offs against the note when sued by the holder. If a note after due should be transferred, and should pass through several owners, to each of whom the maker had made a payment, he certainly would be allowed to prove the several payments to each individual ; why not then shew a set off against each ? as under the statute he may give notice of almost any matter as a defence which might be pleaded. But it is not necessary to decide that question now.

In the present case, Johnson, having purchased the note after it was due, held it as the assignee and representative of Smith, the payee, clothed with the same rights and subject to the same equities. That he stands in the relation of an assignee, results from the fact that he purchased it after it was due and dishonored, and that in purchasing under these circumstances he takes it wholly on the credit of the seller, and is possessed of the same and no greater rights.

It is a well settled principle that the assignee is regarded as the representative or substitute of the assignor. If the right of action, which is transferred, is not negotiable, the action must be in the name of the assignor; but if negotiable, (and sold after due,) it may be in the name of either, but subject to the same defence as if sued by the assignor. Johnson, then, being the representative of Smith, (under a liberal construction of the statute,) there may be said to have been mutual dealings between the parties, and certainly with as much propriety as in *Tuttle* v. *Beebe,* where the defendant was allowed to off set a bond given by the plaintiff to a third person, and assigned by him to the defendant, although he could not have maintained an action in his own name on the bond. In *Bottomly* v. *Brooke,* the defendant, who was the obligor of a bond, was allowed to prove that the bond was given to the plaintiff for the benefit of Mrs. Chancellor, and to avail himself of an off set against her. In *Coppin* v. *Craig,* 7 *Taunton,* 243, defendant pleaded that the plaintiff sued as trustee for Appleton, and that Appleton was indebted to defendant, &c. The off set was allowed. Where a claim was assigned and an action brought in the name of the original creditor for the benefit of the assignee, the debtor was allowed to off set his demands against the assignee. 2 *Cranch,* 342. In *Ruggles* v. *Keeler,* 3 *Johns. R.* 263, an off set was allowed against the *cestui que trust.*

The cases of *O'Callaghan* v. *Sawyer,* 5 *Johns. R.* 118, and *Ford* v. *Stuart,* 19 *id.* 342, presented the same question of set off as the one now under consideration, and in each case the set off was allowed; and in the latter case the set off was a judgment against the payee of the note, who had transferred it, and this judgment had been transferred to the defendant.

In *Hendricks* v. *Judah,* 1 *Johns. R.* 318, it is laid down that where a note is fraudulently transferred before it is due, to avoid the defendant's off set, or where a note is transferred after it is due, the maker may avail himself of his set off against the original owner, although sued in the name of the person to whom it was transferred.

In the case of *Alsop* v. *Caines*, 10 *Johns. R.* 396, Caines purchased a quantity of books of Alsop and others, who were plaintiffs in the suit, and by such purchase became indebted to them. The account was afterwards, by direction of Isaac Riley, assigned to one Fairchild, to whom Riley was indebted, and for whom the suit was prosecuted. Caines pleaded that the plaintiffs in selling to him acted as the agents or factors of Riley, and that Riley was indebted to him, which indebtedness he offered to set off. Judge Kent, in giving the opinion of the supreme court, decided that the set off could not be *pleaded* but must be offered under a notice ; and that if it could be pleaded, a court of law could not take notice of such complicated trusts and interests. This cause went to the court of errors, 13 *Johns. Rep.* 22, &c. where *Cantine* and *Sanford*, senators, gave the only opinions on *affirming* the judgment. *Cantine* held that the off set would have been available under the general issue and notice, but could not be *pleaded*, and affirmed the judgment on the defect in pleading. *Sanford* gave a short opinion, and without touching the question of the competency of the set off, decided that a set off could not be *pleaded*, and affirmed the judgment. This case, so far as it goes, is, I think, a strong expression of opinion of this court in favor of the set off, if it had been offered by way of *notice* instead of *plea*, and is probably entitled to as much weight in the decision of the present cause as the case in error of *Wheeler* v. *Raymond*, where *Jones*, chancellor, and *Stebbins*, senator, were for affirming on different grounds.

The authorities show, and it must be conceded, that under the English statute the off set offered in the present suit would have been available ; it must also be conceded that the two first provisions of our statute are substantially the same as the British statute ; and that decisions under the British statute, so far as the statutes agree, are authorities in relation to our own.

Under the two first provisions of our statute, I think the defendant below was entitled to his off set ; and because he

could not have a judgment against the plaintiff below for the balance, if a balance had been certified in his favor, it is not a fair exposition of the equity of the statute to take away that part which is secured to him. Because he could not avail himself of the whole statute, he ought not to be deprived of the benefit of those provisions of which he might avail himself without working the injustice alluded to by the supreme court. As far as his off set went to sink the debt of the plaintiff below, he was entitled to it, but of course could not recover his balance, if any, against the *plaintiff* to the record, because the *plaintiff* had not been *overpaid.*

In this construction I am supported by the" opinion of Cantine, senator, in *Alsop* v. *Caines,* 'and by Stebbins, senator, in *Wheeler* v. *Raymond,* in whose opinion I fully concur, except that I cannot subscribe to the distinction made by him that the off set must be against the party to the record or the party in *immediate* interest; but even with that qualification I think this off set sustainable. If Johnson is to be regarded as the assignee of Smith, the payee of the note, (and I think he is, the note having been transferred after due, and of course taken on his credit,) then he represented Smith's interest, and according to a liberal construction of the statute, Smith may be considered a party *in interest,* suing in the name of Johnson; and he would be so in fact if he sold the note as wholly unpaid, and it should turn out that he had received part, or that a valid set off existed against him, because he would be bound to respond in damages to Johnson.

It was urged that the legislature, in the new revision, had given a legislative construction in favor of the opinion of the supreme court in this cause, by providing a remedy for a case like the present. 2 *R. S.* 318. The legislature undoubtedly intended to guard against frauds which might be practised with impunity under the exposition of the supreme court, and therefore by express enactment provided for such a case of set off; but this enactment merely reiterates what was before considered a well settled principle in the construction of the old statute.

The decision of the supreme court in refusing a set off, in all cases except where it can be made against the plaintiff to the record on the ground that the defendant cannot recover his balance against the plaintiff where the off set is against a third party, is too narrow. It entirely renders void the beneficial provisions of the statute in regard to negotiable paper transferred after it is due.

Considering, therefore, the uniform current of English decisions, with those in our own courts down to *Wheeler* v. *Raymond*, and believing that what has heretofore been considered the correct doctrine in relation to set offs is calculated to subserve the ends of justice and carry out the benign intentions of the legislature, I feel constrained to decide against what I consider an innovation upon the construction of a salutary law; more especially as this innovation subverts the barriers against fraud, and overturns wholesome adjudications of the same court from which the present decision emanated. The judgment must be reversed.

By Mr. Senator Tallmadge. There appears to be one main point, and only one, on which the decision of this cause rests, and that is to be determined by the construction which this court shall give to the statute of set off, as it existed previous to the revised statutes.

The supreme court held, that a " set off is allowable only in those cases where, if it exceed the plaintiff's demand, the defendant may compel the plaintiff to pay the excess ;" in other words, it exists only against the *plaintiff to the record*.

By our statute of set off, 1 *R. L.* 515, it is enacted, that if two or more persons dealing together be indebted to each other, or have demands arising on contracts or credits against each other, and one of them sue any one or more of the others, it shall be lawful for such defendant to plead the general issue, and give notice in writing with the said plea, of what such defendant will insist upon at the trial for his discharge, and give any such demand, &c. so given notice of, in evidence. And if it appears to the jury that the plain-

tiff is overpaid, then they shall find a verdict for the defendant, and certify to the court how much they find the plaintiff to be indebted to the defendant more than will answer the debt or sum demanded; and the sum so certified shall be recorded with the verdict, and the defendant shall have judgment and execution for the same. The *English* statute provides that the defendant may *plead* his set off specially; but does not allow any balance that may be found due the defendant, to be *certified* in his favor. In other respects the *English* statute is the same as ours. That there have been conflicting decisions on the construction of these statutes cannot be doubted. And such decisions, perhaps, in a great measure result from the very nature of the matters decided. One object of the statute of set off was to protect the equities of parties. Under the equitable powers thus exercised by a court of law, many apparent discrepancies will exist. The same may be said of a court of equity. Where the facts are multifarious and complicated, they cannot in all cases, except on the *Procrustean* principle, be reduced to one general standard. Hence the decisions of a court of equity as well as of law, under its equitable powers, must always be examined in reference to the peculiar state of facts upon which they are made. This rule being borne in mind, many seeming inconsistencies will be reconciled.

The question, then, that naturally presents itself is whether former decisions have settled the construction of this statute; and if so, whether, under that construction, the set off in this case is available to the defendant.

It would seem from the opinion of the supreme court, in *Wheeler* v. *Raymond, 5 Cowen,* 231, that the English decisions, to the extent they have gone, are not applicable to our act; but in *Gordon* v. *Bowne, 2 Johns. R. 155,* Kent, Ch. J. says, the English *set off* act is in substance the same as ours. The statute 2 *George* II. *c.* 22, § 13, provides that where there are *mutual debts* between the parties they may be set off. The words " mutual debts," in the English statute, and " dealing together, and being indebted to each oth-

er," in our act, are expressions of the same import, and the

English decisions upon the construction of their statute are perfectly in point as to the construction of our act. Subsequent cases have recognized the English decisions fully, and have even gone beyond them.

This statute has received in England the most liberal construction ; and it seems to have been the intention of the English judges to embrace within its salutary provisions the different equities that should from time to time come under its operation. Our courts, with the same views, have endeavored to give effect to its provisions in the same way.

1. The great difficulty with the supreme court seems to arise from the clause which says, that in case of a *balance* found due the defendant it shall be *certified* to the court, and the defendant *shall* have judgment and execution for the same. The defendant, of course, could not have judgment and execution against any other person for that balance, because no execution can ever go except against a party to the record ; and this is all the legislature ever intended by it. By this construction full effect is given to all the provisions of the statute ; by any other the objects of it are mostly defeated. This also appears to be the view of he statute entertained by this court in *Alsop* v. *Caines*, 13 *Johns. R.* 23, to which we shall have occasion to refer more particularly hereafter, so far as we can judge from the opinion of Senator Cantine. He says, " a strict construction of the act would limit the right of set off to the parties to the record ; and to answer its beneficial purposes, it is necessary to extend that right to the parties in interest, though not parties to the record. Again, the act directs that where the plaintiff is overpaid, the jury *shall* find a verdict for the defendant, and certify the amount due from the plaintiff, &c. A strict and literal construction of this branch of the statute would produce the difficulty suggested by the supreme court in their dicision of this cause. A liberal construction would permit the defendant to set off as much as was necessary to protect himself against the claim of the party in interest, though not to the record."

The construction of both statutes having been the same, it may be proper now to enquire whether, in point of fact, the clause in our statute allowing a certificate and providing for the recovery of a balance found due to the defendant, has varied or ought to vary the construction it has heretofore received. This clause was first introduced by the colonial legislature in 1714, so that more than a century has elapsed since it assumed its present shape ; during which time the English statute has received the most liberal construction, and their decisions have all along been considered, in the language of Ch. J. Kent, "perfectly in point as to the construction of our act." What was the object of the colonial legislature in the introduction of this clause ? was it to limit or extend the operation of the statute ? Its very title, "*An act for preventing the multiplicity of law suits,*" declares its purpose. But is its object attained by limiting the right of set off only as against the party to the record ? What then becomes of that numerous class of cases where the equities, on the part of defendants, exist against intermediate holders of negotiable or other paper ? They must resort to their suit at law or bill in equity ; and this too to *prevent the multiplicity of law suits !* Are the purposes of justice promoted by such a limited construction ? certainly not. And still the act we are now considering is "an act for the amendment of the law, and the better advancement of justice." As far as my experience goes, the case very rarely occurs, where a defendant's set off exceeds the plaintiff's demand, so as to entitle him to a certificate for the balance. Whilst this clause, according to the decision of the supreme court, provides for these few cases, it at the same time excludes, by that construction, a vast variety of set offs that were always allowed under the original statute ; thereby increasing litigation, which it was the declared object of the statute to prevent, in a ten fold, nay, an hundred fold ratio to its diminution.

It is very evident that this clause could not have been intended to take away any of the benefits of the original statute, but rather to confer additional ones. Let us not, therefore, lose the former, whilst we are endeavoring to avail

ourselves of the latter. It was not intended to contract its
sphere of usefulness, because there were no evils from its ex-
tended influence ; but it introduced another salutary provis-
ion, tending still farther to quiet controversies, to prevent liti-
gation and circuity of action. In this view of the statute, it
would seem to be our duty to give full effect to *all* its provis-
ions, and not by a narrow construction circumscribe its
benefits in one way, whilst we are attemping to extend them
in another. *Statuta pro publico commodo late interpretantur.*

It is unnecessary to enquire what would be the construc-
tion of this statute, if it were now for the first time *sub ju-
dice.* Strictly speaking, the English decisions would not be
embraced in the words of this act ; but the equities which
arose, in various cases, soon induced the courts to extend its
provisions, so as evidently to meet the intention of the legis-
lature ; but perhaps beyond what its literal interpretation
would warrant. Following those decisions, our own courts
have given to our act the same construction and never
thought of confining the set off to the party to the record,
till the opinion pronounced by Justice Woodworth in *Whee-
ler* v. *Raymond,* 5 *Cowen,* 231. It is too late, therefore, to
urge that the case under consideration does not come within
the meaning of the words "mutual debts," or "persons
dealing together, and indebted to each other." That ques-
tion has long since been settled on both sides of the water.

If, then, the same construction has been given to our statute
as to the English, so far as their provisions are in substance
alike, shall we now, at this late day, alter that construction
because our act contains the *certificate* clause not embraced
in the English statute ? The object of the original act was
to prevent cross actions and bills in equity, and the clause
added by the colonial legislature was to prevent, still farther,
the multiplicity of lawsuits. But, under the construction of
the supreme court, the evils intended to be remedied must
return with accumulated severity.

I have looked into numerous cases on this subject, and all
the difficulties seem to arise from a desire on the part of the
court to protect the equities of each, according to its partic-

ular circumstances. The cases, however, may in the main be reduced to three classes : 1. Such as allow the set off against the party to the record ; 2. Such as allow it against the party in interest or party litigating ; 3. Such as permit it against a *payee* or holder of negotiable or other paper, parting with it after due, although not a party to the record, nor in interest, nor litigating.

Of the *first* class is the case of *Tuttle* v. *Beebe*, 8 *Johns. R.* 152. Tuttle sued Beebe in an action of assumpsit. The defendant at the trial offered, pursuant to the notice subjoined to his plea, to set off two bonds executed by the plaintiff to third persons and assigned to the defendant prior to the commencement of the suit, which was rejected by the judge. The court, after examining the authorities on this subject, say, " Considering that the statute of set off ought to be, as it always has been, liberally expounded to advance justice and prevent circuity of action, we are of opinion that the set off ought to have been admitted, and we the more readily adopt this course because it appears to be the most in harmony with the general rules that have governed this court in protecting the rights of assignees."

Of the *second* class is the case of *Bottomly* v. *Brooke*, 1 *T. R.* 621, cited by Ashurst, justice, in *Winch* v. *Keeley*. This was an action on a bond. The defendant pleaded that the bond was given to the plaintiff in trust for Mrs. *Chancellor*, and that before suit brought she was indebted to the defendant more than the amount of the bond. The set off was allowed, and this case often recognized as sound law by the English courts.

As the law relative to the two preceding classes seems to be well settled, I have purposely avoided the citation of numerous cases in support of them.

We now come to the *third* class, and which embraces the case under consideration. *O'Callaghan* v. *Sawyer*, 5 *Johns. R.* 118, came before the supreme court on a writ of error from the Cayuga common pleas. The declaration was on a promissory note drawn by O'Callaghan, dated 29th March, 1803, and payable to *Moses Sawyer* or bearer, on or before

the 1*st September* following, for 22 dollars and 50 cents with interest. The payee, on the 10th March, 1808, the principal and interest being unpaid, endorsed the note to the plaintiff, in a fair course of trade. The defendant pleaded *non assumpsit*, and gave notice that he would give in evidence at the trial, that *Moses Sawyer*, before the endorsement, was indebted to him in 600 dollars for money lent, goods sold, &c. At the trial the plaintiff proved the note and endorsement, and the defendant, to prove his *set off*, offered to prove goods sold to *Sawyer* before the endorsement of the note ; but the court below overruled the testimony, and declared that evidence of any demand existing in favor of the defendant against *Sawyer*, previous to the endorsement, was improper. The court say, " The set off ought to have been received. The note had long been due and dishonored when it was endorsed ; and the point has been too long settled and too repeatedly recognized to require any discussion now, that the endorsee took the note subject to all the equity, and to any defence which existed against it in the hands of the original payee." It should be remarked that this was not a hasty decision ; it appears, by the report, that the authorities bearing on the question were gone into by counsel on both sides, and that the court, after all this, say *the point has been too long settled and too repeatedly recognized to require any discussion now.*

The next case under this class is that of *J. Ford* v. *Stuart*, 19 *Johns. Rep.* 342. Assumpsit on a promissory note dated July 12, 1817, made by the defendant, for 200 dollars, payable to *Obadiah Ford* or bearer, on the 5th day of February, 1818, with interest. On the trial, the plaintiff proved the transfer of the note to one *Vanderbilt* on the 16th April, 1818, and by *Vanderbilt* to him soon after. There were three endorsements on the note, in February, March and April, 1818, of payments, leaving a balance of $163,43. The defendant, under a notice given for that purpose, offered in evidence, by way of set off, a judgment in the Ontario common pleas, against *Obadiah Ford*, in favor of *Adrian Post*, docketed the 2d of May, 1817, for $118,17, and an assignment of the same to the defendant, dated 30th of March,

NEW-YORK,
Sept. 1830.

Bridge
v.
Johnson.

1818.    The set off was objected to, but allowed by the judge. A motion was made to set aside the verdict, and for a new trial.    The court say, " It appears that when the defendant purchased the judgment, *Obadiah Ford* held this note, as payee, against the defendant as maker; and it was not endorsed to the plaintiff until several months after it was due. The plaintiff, therefore, took the note subject to all equity."

From these authorities, did the matter rest here, there can be no doubt that the set off in the present case ought to have been allowed.    The next inquiry is, whether *Raymond* v. *Wheeler*, 9 *Cowen*, 295, decided in this court, establishes a different rule.    This we are not to intend; for a principle as well settled as the one in the cases above cited, is not to be overturned but for very cogent reasons; and we shall then yield it our reluctant assent only from imperious necessity—a necessity which requires us to maintain the law as we find it, and to declare it accordingly.    The maxim *stare decisis* is one to which we shall all be disposed to adhere; it is a salutary one.    But whilst we are required to maintain the decision in *Wheeler* v. *Raymond*, we are not called on to *endorse* all the reasoning in the case by which individual members of the court may have arrived at that decision.    We should distinguish between the discussion of collateral matters and the *point* on which the decision turns.    This remark applies with peculiar force to the adjudications of this court, where a member may deliver an opinion, and the court may concur in the conclusion to which he has arrived; but for different reasons.    Under such circumstances, it would hardly be pretended that all the positions discussed and the reasons adduced were to be binding on a future case, not involving the main question on which the other might and is presumed to have been decided.

Reports of adjudged cases are not the law, but merely evidence of the law; and if the reasoning of the court does not necessarily lead to the conclusion to which they arrive, but the prominent points of the case justify that conclusion, we may then safely consider the law as to those points settled, and not feel constrained to extend the supposed *result* of their

reasoning to a class of cases not embraced in it, but which are only embraced within the reasoning itself.

What then does the case of *Wheeler* v. *Raymond* establish? The action was debt on judgment; the defendant below pleaded a release; the plaintiff replied that he assigned parcel of the judgment to *Lush*, who assigned to *Roberts*; that he assigned another parcel to *Kane*, who also assigned to *Roberts*; that *Roberts*, being thus possessed of these two parcels, forming together but part of the judgment, assigned such part thus vested in him to *Robinson*, for whose benefit the suit was brought. *Rejoinder*, that *Roberts*, before suit brought, was indebted to the defendant, &c. equivalent to a *plea* of set off. The question, therefore, was strictly whether the defendant could avail himself of his set off by *plea*, or whether it was a case of interfering and complicated trusts? either of which was sufficient to decide it. It is difficult to gather from the case on what precise ground it was decided in this court. The reporter represents Ch. *Jones* as examining the questions presented by the case at large, and as delivering an opinion in favor of affirming the judgment of the supreme court, substantially on the ground taken by that court. There was very little utility in his examining the case at large, if he decided it on the narrow ground taken by the supreme court, to wit, that the set off could be had only as against the *party to the record;* when in fact that question was not necessarily involved in their decision. It was suggested by counsel on the argument that it was understood that the chancellor's opinion proceeded on the ground that the set off could not be *pleaded.* All this serves only to shew that we are left entirely in the dark on the subject, unless it be dispelled by the opinion of Senator *Stebbins.* He is for affirming the judgment of the supreme court, but for different reasons; that is, that the set off is not available at law, not because it cannot be set up against any but the plaintiff to the record; for he considers that it may be also had against the party litigating. These are the two cases to which he limits the right of set off. Was this limitation necessary to the decision of the question then under considera-

tion? Certainly not; for the direct point raised by the pleadings was whether the set off, under the peculiar circumstances of the case, could be pleaded. From the uncertainty as to the purport of the chancellor's opinion, we have a right to infer that the court, in coming to the conclusion to affirm the judgment, did it on the *prominent points raised in the cause,* and not on those not absolutely necessary to its decision.

There is another consideration, which, in legal intendment, will warrant this conclusion. Senator *Stebbins* examines the case of *Alsop* v. *Caines,* 10 *Johns. R.* 396, and says, "It is analogous to the present upon this point: it was brought in the name of *Alsop* for the benefit of one *Fairchild,* to whom the demand had been assigned; the defendant pleaded a set off against *Riley,* who, he averred, was the original party in interest or *cestui que trust,* but who, at the time of the commencement of the suit, had no interest in the controversy; it was not a question of set off against a person litigating as *cestui que trust.*" This, although an imperfect *statement of the case, sufficiently shews the ground* on which it was decided. Why is the case "analogous to the present on this point?" because, as Chief Justice *Kent* remarks, "a court of law cannot recognize and settle such interfering and complicated trusts." But there was another and sufficient ground on which that decision turned: the plea in fact was a plea of set off of a demand due from *Riley* to the defendant. The defendant *pleads* the set off in bar of the action, instead of pleading the general issue, and giving *notice* of it as the act directs. This, therefore, was of itself fatal; for it is well settled that a set off cannot be *pleaded.*

It is also worthy of remark that Ch. J. Kent, being one of the court, who decided the case of *O'Calaghan* v. *Sawyer,* 5 *Johns. R.* 118, in which the doctrine contended for by the plaintiff in error was fully established, does not, in the case of *Alsop* v. *Caines,* review or allude to that decision. If that principle, thus solemnly settled by the court, was intended to be overruled by *Alsop* v. *Caines,* it would have undergone, from the chief justice, a discussion in such a manner as to leave no doubt in the mind as to the intention of the court

But as to *Alsop* v. *Caines*, it is sufficient to say that there were two prominet points on which the case was or may have been intended to be decided, to wit, the pleading, instead of giving notice of the set off, or the difficulty in recognizing and settling in a court of law, such interfering and complicated trusts. The judgment in this cause was afterwards affirmed in the court of errors, 13 *Johns. R.* 22; and it will be seen that among the points submitted by counsel · on the argument was the one whether the set off could be *pleaded;* and also, whether a court of law could recognize and settle such interfering and complicated trusts. *Cantine,* senator, so far from confining the set off to the plaintiff on record, expressly says, "there appears no good reason against the right of set off in this cause, if the plaintiff in error can avail himself of that right under a special plea of set off;" but he was of opinion that it could not be *pleaded,* but ought to have been set forth in a notice under the general issue. His whole course of reasoning shews that the statute should receive a liberal construction; and repels, in every shape, the idea so strongly urged by the supreme court, that the set off can be had only as against the plaintiff on record. Another reason to justify this conclusion is, that in *J. Ford* v. *Stuart,* decided nine or ten years after, when Mr. Justice *Yates,* who tried the cause, with other members of the court, were the same that decided *O'Calagan* v. *Sawyer,* they recognize the same doctrine, and never once suggest that *Alsop* v. *Caines* was intended to establish a different principle. We are therefore constrained to believe that those cases never have been, and never were intended to be overthrown; and more especially, as Justice *Woodworth,* in delivering the opinion of the supreme court, and Senator *Stebbins,* in his opinion in the court of errors, never once allude to them. The conclusion then seems irresistible, that the principle of those cases yet stands.

But it was said on the argument that the revised statutes, 2 *R. S.* 354, enacted the same principle of set off as those for which the plaintiff in error contends, and that such enactment shews that farther legislation on the subject was

NEW-YORK, deemed necessary. There is no doubt in my mind that this
Sept. 1830. enactment was in affirmance of the law as it then stood. It
~~~~~ is well known that many principles, by way of making the
Bridge
v. system more complete, are embodied in the revised statutes,
Johnson. which were well settled before. And it is worthy of remark,
that in *ch. 6, part 3d* of the original reports of the revisers
to the legislature, this very subdivision is in substance insert-
ed, and to it is appended a reference to the case of *Ford* v.
*Stuart,* 19 *Johns. R.* 342, as authority for the principles con-
tained in it. From this it may fairly be inferred that the le-
gislature intended it in affirmance of the existing law ; and
the more so, when we reflect that one of the revisers who
submitted this chapter, was the counsel that maintained the
principle in *Ford* v. *Stuart.* It may justly be supposed, there-
fore, that it was a principle well established, and that the re-
vision was intended to rescue it from any doubt which *Whee-
ler* v. *Raymond* might be calculated to cast upon it. The
conclusion then, to which we seem irresistibly drawn is, that
*Wheeler* v. *Raymond* does not decide the present case.

From the preceding examination it must be apparent that
the current of authority is in favor of allowing the set off.
That the justice of the case requires it is conceded on all
hands. The plaintiff took the note subject to all equities ;
and whether he be a *real* or *nominal* plaintiff, it makes no dif-
ference, so far as the rights of the defendant are concerned ;
he stands in the shoes of the *payee,* against whom the set off
is claimed. He is presumed to have full knowledge of the
defendant's equity ; for the note came to him after due, and
carried on its face the marks of its dishonor. The payee too
may be insolvent, and the defendant may rely on his set off,
as the only means of saving his demand. The plaintiff in
legal contemplation knows of the existence of the set off at
the time of taking the note ; or if he be ignorant of it, it is
at his peril. Shall the defendant then lose his demand, and
shall the plaintiff have the benefit of it ? Shall his rights be
taken from him by transfer, made without his knowledge,
and by a transaction to which he is not a party ? Had the
payee commenced the suit, the defendant would have been

entitled to his set off, and to have had any *balance* that should be found due him certified in his favor. Why then shall we adopt a rule which, in case of the transfer of the note, shall deprive him of his *balance* not only, but even of his set off to the amount of the note ?

Upon the whole, it appears to me, on the ground both of reason and authority, that the set off in this case is available to the defendant. My opinion therefore is, that the judgment of the supreme court ought to be reversed.

On the members of the court severally expressing their opinions as to the decision of the cause, it appeared that

For *affirmance*, were—The CHANCELLOR, and Senators AL-LEN, ARMSTRONG, BENTON, BRONSON, CONKLIN, DEITZ, GERE, McCARTY, REXFORD, THROOP and TODD—12.

For *reversal*—Senators BEARDSLEY, BOUGHTON, HUBBARD, MATHER, McMARTIN, OLIVER, SHERMAN, TALLMADGE, WAR-REN, WHEELER and WOODWARD—12.

The members of the court bding equally divided, a question arose, whether or not the judgment of the supreme court stood *affirmed.*

At a subsequent day, the following opinions were delivered by the chancellor and the president of the senate *pro tem. :*

By the CHANCELLOR. The question has never before aris-en in this court as to what is to be the result of an equal di-vision of the members on an appeal or writ of error. I have therefore taken some time to examine it, with a view to have a correct decision made, and without reference to the partic-ular cause now before the court. I commenced the inves-tigation with an impression that no judgment either for af-firmance or reversal could be given where the court was equually divided ; but after a full examination of the authori-ties, I am satisfied the law is otherwise, and that the judg-ment of the court below, in such a case, stands affirmed. By the 28th rule of this court the practice, in cases not other-

NEW-YORK, wise provided for, is to be similar to the practice of the court
Sept. 1830. of *exchequer chamber* in England on writs of error, and con-
formable to that of the house of lords of England when sit-
ting as a court of appeals. In the court of exchequer cham-
ber there, if the members are equally divided, the judgment
of the court below is affirmed, as was done in the case of
*Deighton* v. *Grenville, Cruise on Fines,* 3 *Irish ed.* 118. 2
*Tidd's Prac.* 1236. 1 *Show. Rep.* 46, *note.* A similar de-
cision was made in the court of exchequer chamber in Ire-
land, in the case of *Warburton* v. *Loveland and Ivie,* in 1828,
1 *Hud. & Brooke's R.* 725. The same practice was adopt-
ed by the supreme court of the United States, in the case of
*Elting* v. *The Bank of the United States,* 11 *Wheat. Rep.* 59,
and such is the practice of the house of lords in England, 2
*Tidd's Prac.* 1236. It is said the practice in the house of
lords depends upon their manner of putting the question,
which is always in this form : Shall this judgment or decree
be reversed ? If a majority does not vote for a reversal, it is
affirmed of course. That is the question in all courts to
which an appeal or writ of error is brought ; and I appre-
hend the particular mode of stating the question can in no
wise alter the law on the subject, or vary the result. The
practice in this respect is certainly conformable to principle,
at least in this court where the judges of the court below
have no vote on the question of affirmance or reversal. The
judgment of the court below must be presumed to be right
until this court of dernier resort has decided otherwise. But
such a formal affirmance, although it leaves the law of the
supreme court undisturbed, cannot be considered as settling
the law in this court, except so far as relates to the particu-
lar cause in which the decision is made. The maxim *stare
decisis, et non quieta movere,* cannot be applicable to such a
case, where the question never has in fact been decided by
this court.

By Mr. Senator OLIVER, President of the Senate *pro tem.*
In *Boadwell* v. *Weeks, on appeal,* 13 *Johns. R.* 1, the court
being equally divided, the lieutenant governor gave his vote

Bridge
v.
Johnson.

and *reversed* the judgment. It was at that time considered that the president of the senate could only give a casting vote upon an equal division of the court, and that he could vote in no other case ; an opinion sanctioned by the statute, 1 *R. L.* 135, § 11. This opinion I conceive to be wholly overruled by the decision of the court of errors in the case of Lieut. Gov. Throop, 2 *Wendell,* 215. In that case, the chancellor says : " A former member of this court, a senator from the first district, came to a conclusion that such a power, (that is, the power of the *legislature* to restrict the lieutenant governor to a casting vote,) existed from the necessity of the case ; that without such power, the channels of justice would be blocked up ; that if the president was permitted to vote, and the court were equally divided, no judgment could be rendered, and the record would forever remain here. If that were the case, (says the chancellor,) perhaps a power to provide for such an emergency might be implied," but adds, "no such necessity exists ; the effect of an equal division of the members of this court would not be such as has been supposed." He then suggests a *re-argument* as one mode of getting rid of the difficulty ; but adds : " A more equitable remedy would be, if a *majority of the court were not in favor of a reversal* of the decree or judgment of the court below, to dismiss the writ of error or appeal. In such a case, the opinion of the chancellor or the judges of the supreme court who decided the cause in the court below, and who cannot again vote on the same question here, should be permitted to turn the scale."

He proceeds to give his reasons, and to my mind they are satisfactory. He observes : " The framers of our constitution were well acquainted with the principle of the common law that where a motion is made in a court of justice, and the judges of the court are equally divided on the question, the mover takes nothing by his motion. *Foot* v. *Tracy,* 1 *Johns. R.* 54. *Iveson* v. *Moore,* 1 *Salk.* 17. *Chapman* v. *Lamphere,* 3 *Mod.* 156. And it is not to be supposed they meant to authorise this court or the legislature to reverse that rule." Again : " I deny that it was the intention of the fra-

mers of either constitution to authorize the *reversal of a judgment* or decree, or the granting of any motion, without the concurrence of a *majority of the members present, who are constitutionally competent to vote on the question.*"  Now, by referring to the case of *Foot* v. *Tracy,* it will be seen that in a case like the present, where the party brings a writ for the reversal of a judgment against him, he making the motion to reverse, taking nothing by it, it is to be considered as denied ; otherwise, the consequence might be that the record would be here forever ; and to give any effect to that *denial,* a judgment of *affirmance* ought to be given.

In the case of *Iveson* v. *Moore,* 1 *Salk.* 17, the concluding part of the case is this : " The court being thus divided, and *there being a former rule to stay judgment,* no judgment could be entered ; *et per cur.* if the court had been divided on the *first* motion, the *plaintiff might have entered judgment ;* but now this rule must stand or be discharged, and discharged it cannot be, because the *court* are equally divided."  In 1 *Ld. Raym.* 495, the reporter says in a note : " In this case, upon one of the former motions in arrest of judgment, a rule *was made that judgment should be arrested ;* and now the court being *divided,* the plaintiff could not have the rule discharged nor have his judgment ; *but if upon the former motion, the court had been divided, judgment would have been entered for the plaintiff,*" &c.   Here there has been no rule for reversal *nisi,* &c.

Again : the 28th rule of this court declares, that the practice of the court, in cases not provided for by the rules of this court, shall be similar to that of the *exchequer chamber* on *writs of error ;* and on *appeals,* it shall be conformable to that of the *house of lords.*  Now, the practice of those two courts is stated in a case like the present in Tidd's Practice, 1127 : " In the *exchequer chamber,* it is the practice, upon a division, to *affirm* the judgment, as was done in the case of *Deighton* v. *Greenville ; and so is the practice in the house of lords.*"  1 *Show.* 36.  *Cruise on Fines,* 222.  1 *Str.* 383.

This court, then, has fixed its rule of practice in such cases, by adopting the practice of the exchequer chamber and

house of lords, where not otherwise provided for by its own <span>NEW-YORK,</span>
rules; the defendant in error, therefore, ought to have his <span>Sept. 1830.</span>
judgment of affirmance.

The idea of a new argument, thrown out by the chancellor in the case alluded to in 2 *Wendell*, ought not to be entertained where, by the practice of the court as fixed by its rules, the *vote already taken* is a judgment of affirmance, and the defendant in error is entitled to it. A re-argument has more objections to it than have been suggested. The expense is not an unimportant consideration for refusing it; nor is the delay an inconsiderable matter, for in some cases it might be ruinous. Besides these, there are other considerations, which, constituted as is this court, forbid the idea of a re-argument.

Though the judgment in this case must be *affirmed*, the question of law raised by it must be considered as remaining open in this court. 11 *Wheaton*, 59.

The Court concurring in the opinions thus delivered as to the effect of an equal division, the judgment of the supreme court was thereupon *affirmed*.