By the Court,

Cowen, J.
Several of the questions addressed to the witnesses appear to have been allowed by the court be *196 low on the assumption that the plaintiff might fix a Hen on the unliquidated damages supposed to be due from the defendant, in consequence of his preventing D. Hoyt’s going on after the fire and completing the contract. Perhaps most of them might have been relevant, if such damages can be said to have been in issue. But we think they were not. We are of opinion that the fund contemplated by the statute is confined to what is due or to become due for actual performance by the contractor. (See 3 R. S. 273, 2d ed., act of 1830; and Sess. Laws of 1832, p. 181.) The owner is to retain out of his subsequent payments to the contractor ; (act of 1830, § 1;) and the recovery of the plaintiff is “ to the extent in value of any balance due by the owner to his contractor under the contract with him” at the time of the notice first given by the plaintiff, “ or subsequently accruing to such contractor under the same.” It is the balance due, or the balance subsequently accruing due. (Id. § 4.) The demand must in general be of a nature for which an action of debt or indebitatus assumpsit would lie. At least, it must be due as a consequence of actual performance. The claim arising from a refusal to allow performance is of a nature entirely different. There is not in such case any thing due by the owner under the contract. It is departed from and violated, for which special damages are to be recovered, unmeasured and even more uncertain in their amount than those in many actions brought for a mere wrong.
We are also of opinion that the sum due for money lent from D. Hoyt, the contractor, to the defendant below, and offered as a set-off, was improperly excluded. The assignee of a demand takes subject to every equitable defence existing against it while in the hands of the assignor. I shall presently examine whether this may not be considered the rule even in respect to demands, the legal interest whereof is transferred by absolute assignment; though I admit that promissory notes and bills of exchange are exempt from the rule when sold bona fide, by reason of their peculiar privilege as commercial paper. A proceeding under the statute certainly confers upon the me *197 chanic or material-man no greater rights than those of an absolute assignee.
The claim to set off the note of $312 against Pierson, stands upon a similar principle. By arrangement between him, D. Hoyt and the defendant, Pierson had, in respect to the mason work, taken the place of Hoyt as contractor. The contract for that work stood between Pierson and the defendant. By arrangement he had, pro tanto, taken the place of Hoyt; and the equities are to be considered between him and the defendant.
The question would have been different if the set-offs had been created in fraud of the plaintiff’s lien; but there is no pretence of that being so.
The court below charged, and it is not denied that, by express agreement between the contractor and owner, these matters of set-off might have been applied. The equity is the same, whether there was an agreement or not. It cannot be said, in an equitable sense, that there is a sum due from A. to B. under a contract, when B. owes A. a sum equal to the former. The statute of set-off, as it was worded before the late revisal, spoke of mutual debts only between the immediate parties to the suit; but it was early held that it comprehended, in spirit, a debt due to the defendant from the party under whom the plaintiff claimed. True, a balance could not be certified against the plaintiff in the latter case ; but the set-off was received to operate defensively to the extent of the plaintiff’s claim. In O'Callaghan v. Sawyer, (5 John. Rep. 118,) the plaintiff was assignee, by endorsement, of a promissory note; and the note being endorsed after it was due, this court reversed the judgment of the common pleas, because it had excluded from the defence matter of set-off against the payee. Nearly twenty years after, that case was overruled in Johnson v. Bridge, (6 Cowen. 693.) But this decision, though affirmed by the court of errors, was- maintained by a tie vote; (Bridge v. Johnson, 5 Wend. 342;) and in Driggs v. Rockwell, (11 id. 504,) it may, I think, be considered as overthrown. *198 The late case in the king’s bench of Burrough v. Moss, (10 Barn. & Cress. 558,) agrees with that cited from my reports. It wras not decided, however, without much hesitation, and is in turn I think shown to be very questionable in principle, by the learned opinion of Ruffin, Ch. J. in Haywood v. M’Nair, (2 Dev. & Bat. 283.) But suppose the question to be doubtful, where the debt is absolutely assigned ; suppose the assignor can evade a legal defence by transferring the debt to another; there is a feature in the case at bar which brings it within the narrowest ground to which that of Driggs v. Rockwell can be reduced. The judges who delivered opinions in-that case, (the chancellor and senator Beardsley,) both agreed that where, notwithstanding the assignment, the assignor still continues the real plaintiff, the set-off is receivable. There the note was assigned as a collateral security, and the chancellor said the principal debtor was the real plaintiff. The demand holden by the plaintiff below in the principal case was no more than a collateral security for his demand against D. Hoyt. A recovery will, if followed by satisfaction, satisfy the debt of D. Hoyt, as it would have done the principal debt in Driggs v. Rockwell. The chancellor had before expressed a similar opinion in Bridge v. Johnson.
The objection to the reception of D. Hoyt as a witness was clearly well founded, unless the release enured as a discharge of the witness; .in which latter view it would be still more fatal to the plaintiff’s demand. The effect of his failure to show a fund adequate to the payment of his demand, would be to bar the witness, pro tanto, in any suit he might afterwards bring in his own name for the same fund. This suit was litigated with full notice to him, which the owner is always bound in such case to give the contractor. (Act of 1830, § 2; and see Collins v. Ellis, 21 Wend. 405 to 407.)
On the other hand, most, clearly the debt due from D. Hoyt to the plaintiff was vital to his claim against the defendant. The statute gives it as a consequence of that debt. The claim is a mere incident, like a guaranty. A release of the principal *199 necessarily discharges the surety. True, the legal effect of a release may sometimes he qualified. A creditor releasing one of two joint debtors may restrict its operation in such a a way that it shall not discharge both; but there the debt may remain as to one, though gone as to the other, if it be not actually paid. In the principal case, the creditor sought to enforce the collateral security after the principal debt was discharged, which is contrary to the nature of things. The case is like a grant of the whole subject matter, declaring that it shall not operate according to its necessary legal effect. The intent to discharge D. Hoyt is plain on the face of the instrument ; and words are used entirely adequate to that effect. Suppose a reversioner to give his tenant an absolute deed of bargain and sale, proviso that it shall not have the effect to discharge the rent ■; would either the tenant or his surety for the rent be longer holden 1 It seems to me that the weight of the argument lies on this side of the case. It is said the release was given after the action was commenced ; but that does not alter its effect in the abstract, for a debt may be as well released after suit brought as before. Being after issue joined, indeed after the jury were empanneled, it was, I suppose, necessary to plead the release puis darrein continuance. (Chit. Pl. 658, 9, Am. ed. of 1840, and looks there cited.) Strictly, therefore, the objection perhaps could not avail in form; and it may be conceded that the witness was competent. But for the other reasons mentioned, we are of opinion that the judgment should be reversed.
Judgment reversed.