## CROSS *v.* BROWN.

In trover by an officer against a receiptor of property, the receiptor will be liable for a conversion of the property, if he has destroyed it by his own act, or, in case the property be live stock, if he has killed it by violence, or caused its death by cruel treatment, starvation, or want of ordinary care.

But if, at the time of demand upon the receiptor for certain horses, they are all dead, and he assigns that as his reason for non-delivery, such refusal will not be evidence of a conversion, nor will the burden of showing the cause of their death be upon the receiptor; but he will be presumed to have performed his duty in the treatment and care of the horses until the contrary be shown.

Where the receiptor has allowed the property to go back into the hands of the debtor, and is sued by the officer for the same in trover, the rule of damages will be the value of the property as fixed in the receipt, where the amount of the judgment recovered is larger than the value of such property.

Where an officer takes a receipt for property he has attached, and returns it with the writ to the attorney, who after judgment delivers the execution and the receipt to another officer, who makes demand upon the receipt within thirty days after judgment, this will be sufficient to hold the receiptor, without any demand upon the officer who attached the property.

TROVER, for two horses, of the value of $100 each. Plea, the general issue. It appeared that the plaintiff was a deputy sheriff, in the year 1852, and had in his hands two writs in favor of different plaintiffs, and both against one Greenleaf E. Smith; that said Smith then owned a span

of bay horses, one of which said Cross attached and returned on each writ; that said Smith procured the defendant to sign a receipt in common form to said Cross for these two horses, and that in said receipt said horses were valued at $100 each; and the evidence tended to show that said Cross, after service of said writs, returned them, together with the receipt against Brown, to the attorney who made the writs. These suits against said Smith were prosecuted to final judgment at the November term, 1854, the judgment in each case being for more than $100, and executions were duly issued; which executions, together with said Brown's receipt, were put by the attorney into the hands of one Colby, another deputy sheriff (Cross still remaining a deputy), who, as the evidence tended to show, made a demand upon the defendant for said horses upon said receipt, within thirty days from the rendition of said judgments against Smith, and that the said defendant declined to deliver up said horses to said Colby, and assigned as a reason that the horses were dead. The defendant then proved that both of said horses were dead prior to the time of the demand upon him; and there was some evidence tending to show where said horses had been kept, how they had been worked, and how treated and taken care of, after their attachment and before their death, as also of the age and condition of the horses when attached; and there was some evidence tending to show the manner and circumstances of the death of one horse, but none as to the manner and circumstances of the death of the other. The defendant requested the court to instruct the jury that Colby should have made a demand upon Cross for these horses within thirty days from the rendition of said judgments, and, as it did not appear that any such demand was made upon Cross within said thirty days, or at any other time, that the receiptor was thereby discharged and released from his liability; which the court declined to do. The court instructed the jury that though said horses were

Cross *v.* Brown.

dead, yet the defendant would not be released if he caused their death, and that, in order to have this defence avail him, there must be some evidence or facts tending to show that the defendant was not the cause of their death; that when the said defendant receipted for said horses he had the right to take them into his custody, and keep them and take care of them; but if he chose to let the debtor or some body else take said horses, and work them and take care of them, that such persons must be considered as the defendant's agents for that purpose, and that the defendant would be answerable for their acts in their treatment and care of the horses; and that, if the jury found from all the facts and circumstances before them that it was more probable than otherwise that said horses died without the fault of the defendant or his agents, their verdict would be for the defendant; but if they should find it more probable than otherwise that said horses, or either of them, died in consequence of hard usage, ill treatment, or want of ordinary care on the part of the defendant or his agents in that behalf, then their verdict would be for the plaintiff, and that the measure of damages in such case would be the value of the horse or horses for which they found the defendant liable, as fixed in the receipt, to which sum they might add interest from the time of the demand, by way of damages, if they saw fit.

The jury returned a verdict for the plaintiff for the value of one horse, as fixed in said receipt, with interest from the time of the demand; which verdict the defendant moved the court to set aside, on account of the aforesaid instructions, and refusal to instruct the jury; and the questions of law arising upon the case were assigned to the law term of said court.

*Haywood,* for the defendant, cited *Cilley* v. *James,* 2 N. H. 89; *Sewall* v. *Mattoon,* 9 Mass. 537; *Williams* v. *The East India Co.,* 3 East 192; *Bruce* v. *Dale,* 8 C. & P. 207; *Bissell*

---
Cross *v.* Brown.
---

v. *Huntington,* 2 N. H. 144; *Bromley* v. *Coxwell,* 2 B. & P. 439; Story on Bail.; *Allen* v. *Carty,* 19 Vt. 65.

*Benton & Ray,* for the plaintiff, cited *Cargill* v. *Webb,* 10 N. H. 199; *Webber* v. *Steel,* 13 N. H. 230; *Page* v. *Thrall,* 11 Vt. 229; *Taylor* v. *Rhodes,* 26 Vt. 57; *Stevens* v. *Eames,* 22 N. H. 568; 2 Stark. Ev. 842; 1 Ch. Pl. 157; 2 Gr. Ev., sec. 642, and note; *Carr* v. *Clough,* 26 N. H. 280; 1 Gr. Ev., sec. 79; *Coggs* v. *Bernard,* 2 Ld. Raym. 909; *Phillips* v. *Bridge,* 11 Mass. 242; *Congdon* v. *Cooper,* 15 Mass. 10; *Drown* v. *Smith,* 3 N. H. 299; Story on Bail.

SARGENT, J.  The instructions which were requested to be given to the jury were properly withheld.    This question is settled in *Phelps* v. *Gilchrist,* 28 N. H. 266, where it is held that any other officer beside the one who made the attachment, may make the demand upon the receiptor as the agent of the attaching officer; and if he makes demand without showing or stating his right or authority thus to demand it, yet, if his authority be not questioned at the time of demand, it will be considered as admitted, and the objection waived.    But if he were to show the written receipt, and make the demand upon it, that would be sufficient evidence of his authority, at least *primâ facie;* and in such case no demand need be made upon the attaching officer.    See also *Lovell* v. *Sabin,* 15 N. H. 37; *Stewart* v. *Platts,* 20 N. H. 476.    The case cited by the respondent's counsel is not in point, but is to the effect that when one officer, to whom the execution is delivered, makes a demand in his own right, within thirty days after judgment, for the property attached, upon the officer who attached it, this fixes his liability; and that the receiptor is also liable to the officer to whom he gave the receipt, whether the property is demanded of him within the thirty days or not.    *Allen* v. *Carty,* 19 Vt. 65.

The rule of damages, as stated by the court, being the

amount or value of the property fixed in the receipt, was correct. The case finds that the judgment in each suit was for a larger amount than the value of the property receipted for. When the receiptor allows the property attached to remain in the possession of the debtor, the ordinary rule of damages, in an action by the officer, is the amount of the judgment and interest, and his fees and poundage, if the value of the property exceeds that amount; but if the value of the property, as stated in the receipt, be less than the amount of the judgment, and costs and fees, then the rule of damages is the value of the property, as fixed in the receipt. *Scott* v. *Whittemore*, 27 N. H. 309; *Allen* v. *Carty*, 19 Vt., *ante; Drown* v. *Smith*, 3 N. H. 299.

But it is said that to constitute a conversion there must be a positive tortious act; that a mere negligence is not sufficient; that a demand, and a refusal to deliver the property, when that refusal is explained as in this case, does not amount to a conversion, and therefore that an actual conversion must be shown; and that letting the horses die for want of ordinary care was only a negligence, and not such tortious act as amounts to a conversion.

A demand and refusal, under the circumstances of this case, probably would not alone amount to a conversion, or be sufficient evidence of one. But we cannot see any good reason for a distinction between killing a horse by blows, and starving him to death by merely neglecting to feed him. The receiptor's failure to act in one case, his neglecting to act when the law and the obligations of his contract all impose upon him the duty to act, has the same effect, produces the same result, that acts of violence would do in the other case. As well might it be claimed that a mother, who should starve her child by simply neglecting to feed it, when she fully understood the force of her natural and moral obligations to do so, was not guilty of murder, because she did not cause its death by any direct act of violence, as to claim that it would not be a conversion

of a horse to allow it to starve, when it was a well known duty to feed it, and when there was no excuse for not doing so, while it is admitted that it would be a conversion to kill it by direct violence, without cause or excuse. If a bailee, who is employed merely to keep or carry the goods, and has no beneficial interest in them, misuses a chattel intrusted to him, trover will lie. 1 Ch. Pl. 155. "The circumstance that the property is in the hands of the bailee, with the license of the owner to use it for one purpose, gives no right to use it for another; and the invasion of the owner's right of property is as complete, where the bailee goes beyond his license and duty, as if the control of the property were usurped without any bailment." *Woodman* v. *Hubbard,* 25 N. H. 71. Such intentional, illegal, and culpable neglect of a well known duty in regard to the keeping of a live animal, is not merely the "negligence" referred to in *Bissell* v. *Huntington,* 2 N. H. 145, but is as much a conversion of the property as the "positive tortious act" there spoken of.

There remains but one other point to be considered;— the correctness of the instructions to the jury, that, in order to have the death of the horses avail the defendant as a defence, he must introduce some evidence tending to show that he did not cause their death; thus holding that the defendant must not only show the horses dead, but that he did not kill them. Here it did not appear that the knowledge of their death, or the cause of it, was peculiarly within the knowledge of the defendant, for the defendant's agents, who had charge of the horses, were competent witnesses for either party; and the ruling, we think, must be held to be erroneous. Officers acting under oath, or in whom the government imposes a trust, are presumed to have done their duty till the contrary is proved. *Jackson* v. *Shaffer,* 11 Johns. 513; *Bliss* v. *Ball,* 9 Johns. 132; *Gilman* v. *Holt,* 4 Pick. 258; *Hills* v. *Colvin,* 14 Johns. 132. But the law goes further, and presumes that not only an

officer, but that every man, even in his private capacity and character, does his duty, till the contrary is proved. *Rex* v. *Hawkins,* 10 East 211; *Hartwell* v. *Root,* 19 Johns. 347; *Bank* v. *Danbridge,* 12 Wheat. 69. The law presumes all things rightly done, unless the circumstances of the case overturn the presumption, according to the maxim, "*Omnia presumuntur rilè esse acta,*" &c. 3 Stark. Ev. 1234, 1248, and note; 1 C. & H. Phill. Ev. 195; *Ballou* v. *Campbell,* 5 Wend. 373; *Whittlesey* v. *Starr,* 8 Conn. 134; 1 C. & H. Phill. Ev. 296. It is a general rule that where a person is required to do an act, the not doing of which would make him guilty of a criminal neglect of duty, it shall be intended that he has duly performed it, unless the contrary be shown. Broom Leg. Max. 429, 354.

The nature of the bailment in this case being that of a common deposit, the bailee cannot be required to exercise more than an ordinary care. *Phelps* v. *Gilchrist,* 28 N. H. 272. Nor would the other ruling, as to the preponderance of the evidence, remedy the effect of this erroneous ruling.

If there had been any evidence in relation to the manner of the death of both horses, the instructions might have been well enough, perhaps, taken all together, as the jury might then have settled the whole matter upon the balancing of probabilities as to the cause of the death, as well as the general treatment, of the horses. But upon the instructions given, the jury not being furnished with any evidence by the defendant as to how one horse died, would of course hold the defendant answerable, upon the ground that he was chargeable unless he showed affirmatively that he was in no way the cause of the death; whereas, as we have seen, in the absence of proof, the presumption of law is the other way,—that the receiptor was not guilty of any culpable neglect of duty, or of any act of violence which caused the death.

Upon this ground the verdict must be set aside, and

*A new trial granted.*